IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DELPHIA SIMMONS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> COMERICA INCORPORATED, <br><br> Defendant. | ) Case No. 10-cv-326 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CLASS ACTION COMPLAINT <br> ) <br> ) <br> ) Jury Trial Demanded <br> ) |

**PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Delphia Simmons ("Plaintiff"), on behalf of herself and all persons similarly situated, by and through her attorneys, alleges as follows.

## INTRODUCTION

1.  This is a class action lawsuit brought on behalf of Plaintiff, individually, and on behalf of other similarly situated consumers who were subject to the deceptive re-ordering practice implemented by Defendant Comerica Incorporated ("Defendant" or "Comerica"), which involves the systematic manipulation and re-ordering of electronic debit transactions from the highest dollar amount to lowest dollar amount. The sole purpose of this practice is to deplete the customer's available funds as quickly as possible so as to maximize the amount of overdraft fees collected by Defendant.

2.  This systematic and automated practice of re-ordering debit transactions by Defendant has no relation to the date that the customers' transactions were actually received by Defendant, nor does it bear any relation to the date the debit transactions were initiated by the customer. Two practices Comerica uses to increase the number of charges it is able to levy on its

customers include (a) reordering the debit transactions posted each day so that Comerica is able to charge overdraft fees for multiple transactions even though the customer had sufficient funds to cover some of the transactions, and (b) engaging in the consistent practice of failing to notify customers (or refusing to allow a debit card transaction) where such transaction will cause them to incur an overdraft fee.

3. Consumers, including Plaintiff, depend on Comerica to ensure that debit charges are automatically and immediately posted to their accounts in the chronological order in which they occur. Instead, Comerica routinely posts debit charges to consumers' accounts in a non-chronological and manipulative manner. Upon information and belief, Comerica routinely enforces an automated policy whereby debit charges incurred are posted to consumers' accounts in order of largest to smallest amounts. Comerica engages in this unfair, deceptive, and fraudulent practice in order to increase the number and amount of service fees it may impose upon consumers' accounts that become pre-maturely overdrawn as a result of this practice. By deducting larger charges before smaller charges – regardless of the order in which Comerica receives them – the consumers' accounts are depleted sooner, to the detriment of the account holder. Often times the amount of the overdraft charges ($37 each) exceed the amount of the underlying transactions. These overdraft fees generate substantial revenue for Comerica.

4. These wrongful acts by Defendant constitute violations of the Texas Deceptive Trade Practices Act and the Michigan Consumer Protection Act, in addition to breach of the covenant of good faith and fair dealing and unjust enrichment.

## PARTIES

5. Plaintiff Delphia Simmons is a resident of Detroit, Michigan. Simmons maintains a checking account with Comerica, and has been injured as a result of Comerica's deceptive practices alleged herein.

6. The members of the Class are those individuals that have been charged overdraft fees as a result of Defendant's use of a non-chronological and/or largest-to-smallest re-ordering system and policy when posting debits to customer accounts. Upon information and belief, members of the Class number in the thousands.

7. Defendant Comerica is an entity incorporated under the laws of Delaware, with a principal place of business located at Comerica Bank Tower, 1717 Main Street, MC 6404, Dallas, Texas 75201.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. See 28 U.S.C. § 1332(d)(2)(A).

9. This Court has personal jurisdiction over Defendant Comerica because Defendant maintains its headquarters in this judicial district

10. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(1) and (a)(3) because Defendant Comerica conducts business in this judicial district, maintains its headquarters in this state, and is subject to personal jurisdiction in this Court.

## FACTUAL BACKGROUND

### A.     Defendant Comerica Incorporated.

11.     Comerica is a financial services company that serves thousands of customers nationwide.  Comerica issues stock that is publicly traded on the New York Stock Exchange under the ticker symbol "CMA."  According to its most recent Form 10-K filed with the Securities and Exchange Commission, "[a]s of December 31, 2008, [Comerica] was among the 20 largest commercial bank holding companies in the United States."  As of the end of 2008, Comerica had total assets of approximately $67.5 billion, and recorded net income of $213 million during that year.

12.     Comerica issues ATM cards, debit cards, and check cards to its customers.  According to its website, these cards "allow you to make everyday purchases directly from your checking account, get cash, make transfers, and even earn WorldPerks® award travel miles."[1]  These debit cards also allow Comerica customers to have electronic access to their checking accounts in order to debit funds directly and instantaneously from their account for purchases from merchants, pay bills, withdraw cash, perform deposits at ATMs, and for other electronic debit transactions.

13.     Defendant offers its checking account services through promotional and marketing materials published and issued through the media, in brochures available at Defendant's banking centers, and on its website.

### A.     The Deposit Agreement.

14.     Comerica has a standardized, pre-printed "Business and Personal Deposit Account Contract" that it provides to its customers (the "Deposit Agreement").  A copy of the Deposit Agreement is attached hereto as Exhibit A.

---

[1] http://www.comerica.com/vgn-ext-templating/v/index.jsp?vgnextoid=d6a3227c05ef2010VgnVCM1000004302a8c0RCRD

15. Defendant's customers have no opportunity to negotiate or change the terms of the Deposit Agreement before opening their accounts or becoming joint owners of previously opened accounts. Defendant's Deposit Agreement is a form contract of adhesion imposed by Defendant, the party having the superior bargaining power and resources.

16. In an attempt to avoid liability, Defendant's Deposit Agreement includes, among other things, limitations on damages, a jury trial wavier, and an attempt to impose an artificial one year statute of limitations on consumers' claims against the bank. These provisions are procedurally and substantively unconscionable and, therefore, are unenforceable.

17. Section 2.20 of the Deposit Agreement, entitled "Withdrawals," relates to the re-ordering of transactions. In pertinent part, it provides as follows:

> In our sole discretion, we determine what order checks, transfers or other orders of withdrawal will be paid from the funds in your Account. Generally, we will pay highest to lowest dollar amount after assessing any fees, charges, or other obligations due the Bank.

18. This provision does not disclose Comerica's deceptive re-ordering practices described herein. Among other things, the above language refers to the order in which the bank *pays* these transactions to third parties, not the order in which the transactions are deducted from (or posted to) one's account. Moreover, this language creates the appearance that Comerica will sometimes re-order debit transactions from highest to lowest, when, upon information and belief, its actual practice is to *always* do so for the sole purpose of maximizing its overdraft fee revenue at the expense of consumers. Nowhere in the "Withdrawal" section of the Deposit Agreement (or anywhere else in the contract) does Comerica disclose its deceptive practice of always re-ordering the posting of debit transactions in non-chronological order.

C. **Comerica's Deceptive Re-Ordering Practices.**

19. The multiple overdraft fees imposed by Defendant and posted to Plaintiff's account on July 24 and September 21 of 2009 are examples of Defendant's fraudulent, deceptive, and unfair business practices. The examples below illustrate how Comerica manipulated the posting of transactions for the sole purpose of assessing multiple overdraft fees.

i. **The Chronological Order of the July Transactions.**

20. Plaintiff began this day with a positive account balance of $36.07. Over the course of that day, she made the following debit card transactions with her Comerica issued card, in the following order:

1. She made a $6.04 debit card purchase at a Starbucks; if posted in chronological order, this would have left her with a positive balance of $30.03.
2. She then made a $23.52 debit card purchase at an Indian Village Store; if posted if posted in chronological order, this would have left her with a positive balance of $6.51.
3. Finally, she made a $20.93 debit card purchase at a CVS; if posted if posted in chronological order, this would have left her with a negative balance of ($14.42).

21. In the above example, where the charges are posted in actual chronological order, Plaintiff would have been charged a single overdraft fee for the overdraft charge at the CVS store.

22. Instead of posting these transactions in chronological order, however, Comerica manipulated the transactions, and posted them in order of highest to lowest so that it could assess two overdraft fees instead of one. Specifically, Comerica posted these transactions in the following manner:

### ii. Comerica's Re-Ordering of the July Transactions.

Plaintiff began that day with a positive account balance of $36.07.

1. Comerica first posted the highest $23.52 debit card purchase at the Indian Village Store; this left her with a positive balance of $12.55.
2. Comerica next posted the second highest transaction $20.93 debit card purchase at a CVS; this caused her account to overdraft prematurely, and left her with a negative balance of ($8.38).
3. Comerica finally posted the lowest $6.04 debit card purchase at a Starbucks; this left Plaintiff with a negative balance of ($14.42), and caused her to incur a second overdraft charge.

23. As set forth below, Plaintiff was again assessed multiple overdraft fees as a result of Comerica's deceptive re-ordering practices.

### i. The Chronological Order of the September Transactions.

24. On September 21, 2009, Plaintiff began with a positive account balance of $35.42. She then made the following debit card transactions, in the following order:

1. She made a debit card purchase at a Victor Center for $6.21; this should have left her with a positive account balance of $29.21.
2. She next made a debit card purchase at a Haggerty store for $38.66; this should have left her with a negative account balance of ($9.45).
3. Finally, she made a debit card purchase at a Starbucks for $6.36; this should have left her with a negative account balance of ($15.81).

25. In this instance, had Comerica posted her debit card transactions in the actual order in which they occurred, Plaintiff would have been charged two

Case 1:10-cv-22958-JLK   Document 1   Entered on FLSD Docket 02/17/2010   Page 8 of 18

overdraft fees. As set forth below, however, she was charged three overdraft fees after Comerica posted them from highest to lowest.

### ii.     Comerica's Re-Ordering of the September Transactions.

26.     Plaintiff began with a positive account balance of $35.42. Comerica posted her transactions on September 21, 2009 in the following highest-to-lowest order:

1. Comerica first posted the largest $38.66 transaction at the Haggerty store. This immediately caused her account to be overdrawn, and left her with a negative account balance of ($3.24).
2. Comerica next posted the second-highest $6.36 Starbucks transaction. This caused Plaintiff to incur a second overdraft fee, and left her with a negative account balance of ($9.60).
3. Finally, Comerica posted the lowest $6.21 debit card charge at Victor Center. This caused Plaintiff to incur a third overdraft fee, and left her with a negative account balance of ($15.81).

27.     In both of the above (and in other) instances, instead of posting these debit charges in the actual, chronological order in which they occurred, Comerica manipulated their order and posted them from highest to lowest. Accordingly, instead of being charged a single overdraft fee for the transaction that overdrew the account in the July transactions, Plaintiff was assessed two $37.00 overdraft fees. Similarly, instead of being charged two overdraft fees for the two occasions when her account was overdrawn in the September transactions, Comerica charged her three. Had Comerica posted these transactions in the actual order in which they occurred, Plaintiff would have been assessed fewer overdraft charges. In addition, Plaintiff was not notified at the time of purchase when her account was going to be overdrawn.

-8-
CLASS ACTION COMPLAINT

28. Comerica re-ordered the debit purchases for the sole purpose of maximizing its overdraft revenue.

29. Upon information and belief, Comerica has the capability to notify consumers at the point of purchase if and when their proposed debit transaction will overdraw their account or, at a minimum, alert them that there are insufficient fees in the account. Comerica, however, fails to do so.

30. The overdraft fee revenue earned by Comerica by assessing multiple fees in the manner described above is a lucrative source of income. In 2008, for example, Comerica recorded $229 million in revenue from "service charges on deposit accounts."

## CLASS ACTION ALLEGATIONS

31. This action is brought on behalf of Plaintiff, individually and as a class action, pursuant to FED. R. CIV. P. 23(b)(2) and/or 23(b)(3) on behalf of all consumers who have incurred multiple overdraft fees as a result of Defendant's policy and procedure of (i) inexplicably delaying the posting of debit purchase transactions, and/or (ii) re-ordering the posting of charges to consumer accounts in a non-chronological fashion so as to maximize the number and amount of service fees that Defendant may impose upon consumers' accounts that are consequently overdrawn. The Class does not include Defendants, or their officers, directors, agents, or employees.

32. Specifically, Plaintiff seeks to represent the following class:

> All consumers who have been charged an overdraft fee(s) as a result of Comerica's practice of re-ordering the posting of debit transactions from highest to lowest.[2]

33. Plaintiff seeks to recover damages on a class-wide basis for themselves and the class under the MCPA and DTPA, and common law

---

[2] In the alternative event that this Court declines to certify a nationwide class, Plaintiff seeks to represent classes of Michigan and Texas residents.

principles of contract law, including the contractual duty of good faith and fair dealing, and unjust enrichment, and seek a prospective injunction prohibiting Comerica from continuing to engage in the unlawful practices described herein.

34.     The rights of each member of the Class were violated in a similar fashion based upon Defendant's uniform actions.

35.     This action has been brought and may be properly maintained as a class action for the following reasons:

36.     **Numerosity**: Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains thousands and perhaps tens of thousands of members. The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiff.

37.     **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's practice of re-sequencing electronic debits from highest to lowest dollar amount so as to put its customers' accounts into a negative balance as quickly as possible and artificially increase the number of overdraft fees for electronic debit transactions constitutes an unfair business practice;

- Whether Defendant's practice of charging overdraft fees for electronic debit transactions when customers have sufficient funds in their accounts to cover these electronic debits at the time Comerica received them constitutes an unfair business practice;

- Whether Defendant's actions constituted a breach of contract due to the failure to operate with good faith and fair dealing in transactions with checking account customers in seeking to maximize the amount of overdraft fees allocated to an account;

- Whether Defendant's refusal to notify its customers that they will incur a fee as a result of an electronic debit transaction so as to give its customers the opportunity to avoid the fee constitutes an unfair business practice;

- Whether Defendant's actions constituted an unjust enrichment for them since Defendant has received and is holding funds rightfully belonging to Plaintiff and those similarly situated;

- The appropriate nature of class-wide equitable relief;

- The appropriate measurement of restitution and/or measure of damages to award to Plaintiff and members of the Class; and

- Whether Comerica should be enjoined from continuing to engage in the unfair, deceptive, unreasonable and unlawful practices alleged herein.

38. These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

39. **Typicality**: Plaintiff's claims are typical of the claims of the Class since Plaintiff was a banking customer of Defendant as was each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent class members.

40. **Adequacy**: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent; she has retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action

vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

41.     **Superiority**:  A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Therefore, a class action is the only reasonable means by which Plaintiff and the Class may pursue their claims.  Moreover, even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

42.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

43.     Plaintiff incorporates the allegations in the preceding paragraphs.

44.     Texas Deceptive Trade Practices Act ("DTPA") is codified at TEX. BUS. & COM. CODE § 17.41, *et seq.*  The DTPA allows a consumer to maintain a cause of action based on the use or employment of a false, misleading or deceptive

trade practice by any person, and to remedy unconscionable conduct by any person.  TEX. BUS. & COM. CODE § 17.50(a).

45.   Comerica's misleading deceptive re-ordering practices described herein violate TEX. BUS. & COM. CODE § 17.50(a)(1) because they violate, *inter alia*, TEX. BUS. & COM. CODE § 17.46(12) (which prohibits representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve) and TEX. BUS. & COM. CODE § 17.46(24) (which prohibits the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed).  Plaintiff and putative class members relied on Comerica's misconduct to their detriment.

46.   Comerica's misleading deceptive re-ordering practices described herein also violate TEX. BUS. & COM. CODE § 17.50(a)(3) because they are unconscionable.  Specifically, to the detriment of Plaintiff and Class members, Comerica took advantage of the lack of knowledge, ability, experience, or capacity of consumers to a grossly unfair degree.

47.   Plaintiff and Class members suffered economic damages as a result of Defendant's violation of the DTPA.

## COUNT II

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

48.   Plaintiff incorporates the allegations in the preceding paragraphs.

49.   The Michigan Consumer Protection Act ("MCPA"), MICH. COMP. LAWS § 445.901, *et. seq.,* is designed to provide a remedy for consumers who are injured by deceptive business practices.  The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the act.  *See* MICH. COMP. LAWS § 445.911(3).

50. Defendant's conduct alleged herein violates the Michigan Consumer Protection Act, including, but not necessarily limited to the following sections thereof:

1. § 445.903(n), by causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

2. § 445.903(s), by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

3. § 445.903(bb), by making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

4. § 445.903(cc), by failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

51. As a result of Defendant's violation of the Michigan Consumer Protection Act, Plaintiffs and members of the class have incurred damages.

52. Plaintiff demands actual, statutory, and treble damages.

## COUNT III

### Breach of Contract / Breach of Duty of Good Faith and Fair Dealing

53. Plaintiff incorporates the allegations in the preceding paragraphs.

54. Plaintiff entered into a contractual relationship with Comerica. The Deposit Agreement drafted by Comerica establishes Defendant's contractual obligations to its customers.

55. Comerica owed a duty of good faith and fair dealing to Plaintiff and Class members. This duty arises from, *inter alia*, § 4.303 of the Uniform

Commercial Code. TEX. BUS. & COM. CODE ANN. § 4.303. The 2002 Comments added by the State Bar Committee provide as follows:

> Although the discretion given a bank by subsection (b) is great, the bank must continue to act in good faith in establishing its policies and procedures in this area. **<u>For example, a procedure designed to maximize the number of returned checks solely to increase returned check fees charged to customers would not be appropriate.</u>**

*Id.* (emphasis supplied).

56.     The Deposit Agreement does not disclose that Comerica *always* re-orders debit transactions from highest to lowest amounts. It also does not authorize Comerica to re-order the *posting* (as opposed to the *payment*) of these transactions.

57.     Comerica breached its contractual obligation to Plaintiffs and Class members by charging overdraft fees for electronic debit transactions when sufficient funds were in the customers' accounts to cover those debits when Comerica received them. In other words, had Comerica actually posted the debit transactions in the order in which they occurred, Plaintiff and Class members would not have been charged multiple overdraft fees.

58.     Comerica violated its contractual duty of good faith and fair dealing owed to Plaintiffs and Class members through its daily practice of *always* re-sequencing electronic debits from highest to lowest dollar amount for the sole purpose of artificially creating overdrafts that did not actually occur and thus artificially increase the number of overdraft fees imposed for electronic debit transactions.

59.     Plaintiff and Class members substantially performed their contractual obligations.

60.     Defendant's breach of the Deposit Agreement was material.

61. As a result of Defendant's breach of its contractual obligations, Plaintiffs and the Class members have been damaged in the manner set forth herein.

62. Comerica is liable for those damages in an amount to be determined at trial, and should be enjoined from continuing to engage in these deceptive, unreasonable and unlawful practices as alleged herein.

## COUNT IV

### Unjust Enrichment

63. Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein. This claim is plead in the alternative to the breach of contract claim.

64. By making overdraft payments to Defendant and depositing funds at a Comerica bank, Plaintiff and Class members conferred a tangible economic benefit upon Defendant. Plaintiff and Class members would have expected remuneration from the Defendant at the time the benefit was conferred had they known the true facts regarding Defendant's re-ordering practices and policies. Failing to require Defendant to provide remuneration under these circumstances would result in it being unjustly enriched, and in it being enriched beyond its contractual rights.

65. Defendant was and continues to be unjustly enriched at the expense of Plaintiff and Class members.

66. Defendant's retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order that provides for the following:

     a.    determines that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and certifies the Classes as defined above;

     b.    awards all actual, general, special, incidental, punitive, statutory, and consequential damages to which Plaintiff and Class members are entitled;

     c.    awards pre-judgment and post-judgment interest on such monetary relief;

     d.    grants appropriate injunctive and/or declaratory relief as the Court may deem reasonable; and

     e.    awards reasonable attorney's fees and costs; and grant such further and other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of herself and the putative class, demand a trial by jury on all issues so triable.

Dated: February 17, 2010

          Respectfully submitted,

By:   /s/ Michael A. Caddell
**CADDELL & CHAPMAN**
Michael A. Caddell
mac@caddellchapman.com
Cynthia B. Chapman
cbc@caddellchapman.com
Cory S. Fein
csf@caddellchapman.com
1331 Lamar #1070
Houston, TX  77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail:
JGS@chimicles.com;
MDS@chimicles.com;
BFJ@chimicles.com


**LAW OFFICE OF
 CHRISTOPHER G. HAYES**
Christopher G. Hayes
225 South Church Street
West Chester, PA 19382
610-431-9505 (phone)
610-431-1269 (fax)
Electronic Mail:
chris@chayeslaw.com


**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**